**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Samuel Jolly, Appellant.

Appellate Case No. 2018-000259

———————

Appeal From Dorchester County
Edgar W. Dickson, Circuit Court Judge

———————

Unpublished Opinion No. 2020-UP-327
Heard October 15, 2020 – Filed December 2, 2020

———————

**AFFIRMED**

———————

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards, both of Columbia, and Solicitor David Michael Pascoe, Jr., of Orangeburg, all for Respondent.

———————

**PER CURIAM:** Samuel Jolly married the mother of a nine-year-old girl (Victim) in 1996 and moved in with them. Over the course of the next year, Jolly sexually

abused Victim.  When Victim reported the abuse to a teacher, an investigation began, leading to arrest warrants for Jolly.  Jolly, however, had moved to Florida, and the warrants were not served until he was apprehended in 2013.  In 2013, he was indicted for one count of Criminal Sexual Conduct (CSC) with a Minor, and in 2014, he was indicted for one count of Lewd Act upon a Child.  Both indictments listed the time frame of the crime as "August 1, 1996 to August 22, 1997."  The indictment for Lewd Act upon a Child did not list the type of lewd act alleged to have been committed; however, before his trial, Jolly received discovery, including two statements of the Victim alleging Jolly committed up to sixteen discreet instances of lewd acts during the time period stated in the indictment.

At his 2018 trial, Jolly moved to quash his indictments; the motion was denied.  Jolly also moved to exclude evidence of any lewd acts that occurred outside the scope of his indictment, asserting that, unless the Lewd Act indictment listed the specific act the State was prosecuting him for, the State was circumventing the rules regarding propensity evidence.  The trial court ruled no evidence of lewd acts occurring before the indictment's timeframe could be entered into evidence at trial, but it refused to exclude evidence of lewd acts occurring within the timeframe of Jolly's indictment as prior bad acts.

Jolly also moved to exclude testimony from the forensic pediatrician who physically examined Victim in 1997 and found Victim's hymen was torn.  She documented the exam with photographs and video, but by the time Jolly's trial occurred in 2018, only the notes from the exam still existed.  Jolly asserted the photographs and video of the exam were the "underlying facts or data" upon which the pediatrician had relied in forming her expert opinion Victim's hymen was torn.  Jolly argued that allowing the pediatrician to testify to this expert opinion without disclosing the photographs and video violated both Rule 705, SCRE,[1] and his confrontation clause rights.  The trial court disagreed, and, after taking *in camera* testimony from the pediatrician, it ruled: 1) the pediatrician's testimony was reliable; 2) the pediatrician's testimony did not improperly bolster Victim's testimony; 3) the probative value of the pediatrician's testimony was not outweighed by the danger of unfair prejudice; 4) the subject matter of the testimony was "beyond the ordinary knowledge of the juror and [did] require expert training in the sense that [the pediatrician] is a doctor"; and 5) the

---

[1] "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise.  The expert may in any event be required to disclose the underlying facts or data on cross-examination."  Rule 705, SCRE.

pediatrician had the requisite knowledge and skill to testify on the subject of her testimony. The trial court then allowed the pediatrician to testify as to her physical exam finding of a torn hymen but ruled she could not testify to any opinion as to what caused the tear in the hymen.[2]

After hearing testimony from Victim, the investigators, and the pediatrician, as well as Jolly's testimony in defense, the jury convicted Jolly on both indictments. Jolly now appeals, contending the trial court erred in: 1) finding Jolly's indictments were not vague or overbroad; 2) failing to exclude evidence of his prior bad acts against Victim; 3) admitting opinion evidence from the pediatrician without properly qualifying her as an expert; and 4) admitting expert testimony from the pediatrician regarding the exam she completed on Victim when the photographs and video taken during the exam were lost. We affirm.

## I.

The trial court did not err in denying Jolly's motion to quash his indictments, as they were not vague or overbroad. *See State v. Baker*, 411 S.C. 583, 588, 769 S.E.2d 860, 863 (2015) ("In criminal cases, the appellate court sits to review errors of law only." (citation omitted)). The timeframe of Jolly's indictments was not overly broad. *Compare State v. Wade*, 306 S.C. 79, 80, 409 S.E.2d 780, 781 (1991) (upholding indictment for CSC First Degree with a Minor alleging digital penetration of the victim's vagina, even though the timespan of the indictment was written as "during 1984 through 1985")*, and State v. Tumbleston*, 376 S.C. 90, 101–02, 654 S.E.2d 849, 855 (Ct. App. 2007) (upholding indictments for CSC Fist Degree with a Minor and Lewd Act upon a Child which covered a three-year timespan because "indictments for a sex crime that allege offenses occurred during a specified time period are sufficient when the circumstances of the case warrant considering an extended time frame")*, with Baker*, 411 S.C. at 590–91, 769 S.E.2d at 864 (quashing Baker's indictment for Lewd Act upon a Child because Baker was re-charged two weeks before trial and his new indictment spanned a six-year timeframe instead of the timeframe of his previous indictment, which included three summers only).

Further, we find the effect of the loss of the documents from 1997 implicates a sufficiency of the evidence argument but does not bear on whether Jolly's indictment

[2] The trial court was not asked to and did not charge the jury on the meaning and significance of expert testimony at any point during the trial; however, whether this was an error is not an issue before us on appeal. *See State v. Bray*, 342 S.C. 23, 27 n.2, 535 S.E.2d 636, 639 n.2 (2000) (finding it is error for an appellate court to consider an issue not raised to it).

gave him sufficient notice of the charges against him. *See State v. Massey*, 430 S.C. 349, 358, 844 S.E.2d 667, 671 (2020) ("A motion to quash does not test the sufficiency of the State's evidence; the sufficiency of the evidence can properly be challenged only by a motion for a directed verdict following the State's presentation of its case at trial.").

Next, we find Jolly's indictment for Lewd Act upon a Child enabled the trial court to know what judgment to pronounce and apprised Jolly of the elements of the offense. *See State v. Gentry*, 363 S.C. 93, 102–03, 610 S.E.2d 494, 500 (2005) ("[T]he circuit court should judge the sufficiency of the indictment by determining whether (1) the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon; and (2) whether it apprises the defendant of the elements of the offense that is intended to be charged."); S.C. Code Ann. § 17-19-20 (2014). However, it is a closer question whether Jolly's indictment on its face gave Jolly enough specificity to know what lewd act he would be called upon to answer at his trial. *See State v. Gunn*, 313 S.C. 124, 128–30, 437 S.E.2d 75, 77–78 (1993) (finding it was questionable whether "on its face" a general indictment for conspiracy which tracked the language of the trafficking statute "in most of its many permutations" without giving facts about the conspiracy charged "sufficiently apprised the appellants of the charges against them").

We do not, however, believe this potential facial deficiency required quashing the indictment. *See Baker*, 411 S.C. at 589, 769 S.E.2d at 864 ("In determining whether an indictment meets the sufficiency standard, the trial court must look at the indictment with a practical eye in view of all the surrounding circumstances" that "existed pre-trial, in order to determine whether a given defendant has been 'prejudiced,' i.e., taken by surprise and hence unable to combat the charges against him." (internal citations omitted)). Looking at the surrounding circumstances before Jolly's trial, Jolly had access to Victim's statements describing the lewd acts alleged to have occurred in time to prepare a defense. *Compare Baker*, 411 S.C. at 590–92, 769 S.E.2d at 864–65 (quashing indictment when pre-trial surrounding circumstances resulted in Baker having only two weeks to prepare for trial under new, general indictment for Lewd Act upon a Child)*, with Gunn*, 313 S.C. at 129–30, 437 S.E.2d at 78 (upholding general indictment for conspiracy when the defendants had access to evidence presented to the State Grand Jury before their trial and, therefore, had notice of the facts leading to their charge); *see also* LaFave et al., 5 Criminal Procedure § 19.3(c) (4th ed. 2019) (collecting cases of specificity challenges to general indictments in child sex abuse prosecutions and stating the key

to providing notice in a case where a victim is repeatedly "subjected to the same criminal actions by the same offender in the same place over a period of time . . . may lie more in providing discovery" than in specifying facts in the indictment). Therefore, we find no error in the denial of Jolly's motion to quash his indictment for Lewd Act upon a Child.

Further, even if the indictment was insufficient on its face and was not saved by the pretrial surrounding circumstances and discovery, Jolly has not demonstrated how he was prejudiced. *Cf. State v. Samuels*, 403 S.C. 551, 556–57, 743 S.E.2d 773, 776 (2013) (finding a conviction resulting from a duplicitous indictment should be upheld unless the defendant can prove the indictment: 1) failed the *Gentry* sufficiency test; and 2) actually prejudiced the defendant by implicating a defendant's rights "to notice of the charge against him, to a unanimous verdict, to appropriate sentencing[,] and to protection against double jeopardy in a subsequent prosecution"). First, through discovery, Jolly had actual notice of the alleged acts leading to his charges. Second, the lack of specificity as to which act could give rise to a conviction of Lewd Act upon a Child does not implicate Jolly's right to a unanimous verdict. *See State v. Adams*, 430 S.C. 420, 432–37, 845 S.E.2d 217, 223–26 (Ct. App. 2020) (finding Adams' right to a unanimous verdict for one count of CSC First Degree with a Minor was not implicated even though evidence was presented during trial indicating he committed several sexual batteries upon the child—and of different types). Third, we cannot perceive how Jolly is prejudiced by double jeopardy concerns. In our view, the State's decision to indict him for only one count of Lewd Act upon a Child over the whole year when the State could have charged him with eleven to sixteen discrete charges for the same time period means Jolly may actually benefit from the State's discretion: the State cannot recharge him for those discrete acts. *See State v. Dewees*, 76 S.C. 72, 76, 56 S.E. 674, 675 (1907) (double jeopardy bars prosecution if "the facts charged in the second indictment would, if true, have sustained the first").

Finally, the State did not circumvent the rules regarding propensity evidence by charging Jolly with one count of Lewd Act upon a Child over the course of a year instead of charging him with multiple counts during the same time period. Accordingly, the trial court did not err in finding evidence of the lewd acts committed by Jolly against Victim within the timeframe of the Lewd Act indictment were direct evidence of a crime Jolly was being prosecuted for committing, rather than prior bad acts. *See State v. Hurell*, 424 S.C. 341, 351, 818 S.E.2d 21, 26 (Ct. App. 2018) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are

controlled by an error of law." (citations omitted)).

## II.

The trial court did not abuse its discretion in ruling: 1) the pediatrician was an expert; 2) the pediatrician could testify as to her physical exam finding of a torn hymen; and 3) the pediatrician could not testify to her opinion as to what caused the tear in the hymen. *See State v. Simpson*, 425 S.C. 522, 536–37, 823 S.E.2d 229, 236–37 (Ct. App. 2019) (stating both the qualification of a witness as an expert and the admission of expert testimony are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion). First, the pediatrician's visual finding of Victim's torn hymen required more understanding of a child's genitalia than a lay person would have and was, therefore, expert testimony. *See* Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). Next, the trial court made appropriate findings on the record to qualify the pediatrician as an expert on the subject matter of her testimony. *See Simpson*, 425 S.C. at 536, 823 S.E.2d at 236 (stating "'[b]efore a witness is qualified as an expert, the trial court must find (1) the expert's testimony will assist the trier of fact, (2) the expert possesses the requisite knowledge, skill, experience, training, or education, and (3) . . . the expert's testimony is reliable'" (internal citation removed) (alterations in original)). Additionally, the pediatrician's method for forming the opinion Victim's hymen was torn was reliable, and the "underlying facts or data" on which her opinion was based was the exam itself. Rules 702, 703, and 705, SCRE; *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018) ("In determining whether to admit expert testimony, the trial court must make three inquiries: (1) whether the evidence will assist the trier of fact; (2) whether the expert has acquired the requisite knowledge and skill to qualify as an expert in that particular subject matter[;] and (3) whether the substance of the testimony is reliable."); *Simpson*, 425 S.C. at 537, 823 S.E.2d at 237 ("'A trial court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion whe[n] the ruling is manifestly arbitrary, unreasonable, or unfair.'" (alterations in original) (quoting *State v. Grubbs*, 353 S.C. 374, 379, 577 S.E.2d 493, 496 (Ct. App. 2003))). Jolly seizes on the trial court's statement that the torn hymen finding was not an expert opinion but an observable fact based on personal knowledge. The trial court, however, stated the pediatrician's testimony included "observations based on education and experience." The trial court stated, "it does require the expertise of a doctor to report on the physical findings that she made, and I am going to allow her to testify just as she did." Even if the trial court's ruling was contradictory, we may

affirm for any reason appearing in the record, and the record supports the conclusion the pediatrician's testimony as to the torn hymen was a proper expert opinion. Rule 220(c), SCACR (stating the court may affirm on any ground in the record).

Further, Jolly's Rule 705, SCRE argument is without merit. The pediatrician gave a full description of how the exam was conducted, why it was conducted, and what she discovered during the exam. Accordingly, the pediatrician's testimony exposed the jury to the underlying facts relevant to her opinion formation and, in doing so, went above and beyond the requirements outlined in Rule 705, SCRE.

Finally, the loss of the photographs and video did not implicate Jolly's confrontation clause rights. The pediatrician's physical exam finding was not based on testimonial hearsay, and she was available for cross-examination about her qualifications as well as her method of conducting and documenting the physical exam. *See State v. Graham*, 314 S.C. 383, 385, 444 S.E.2d 525, 527 (1994) ("Specifically included in a defendant's Sixth Amendment right to confront the witness is the right to meaningful cross-examination of adverse witnesses."); *State v. McCray*, 413 S.C. 76, 90, 773 S.E.2d 914, 921–22 (Ct. App. 2015) (finding expert opinion testimony may violate the confrontation clause if the opinion is based on testimonial hearsay and not independent judgment).

Accordingly, Jolly's convictions are

**AFFIRMED.**

**THOMAS, HILL, and HEWITT, JJ., concur.**